MERRICK B. GARLAND
Attorney General

PHILIP R. SELLINGER                KRISTEN CLARKE
United States Attorney             Assistant Attorney General
                                   Civil Rights Division

MICHAEL E. CAMPION                 CARRIE PAGNUCCO
Chief                              Chief
SUSAN MILLENKY                     JENNIFER A. SLAGLE PECK
Assistant U.S. Attorney            Deputy Chief
Civil Rights Division              MARTA CAMPOS
U.S. Attorney's Office             NATHAN SHULOCK
970 Broad Street                   Trial Attorneys
Newark, NJ 07102                   Housing and Civil Enforcement Section
(973) 645-2700                     950 Pennsylvania Ave. NW – 4CON
                                   Washington, DC 20530
                                   (202) 514-4713

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br> v. <br><br> OCEANFIRST BANK, NATIONAL ASSOCIATION, <br><br> *Defendant.* | Civil Action No. <br><br> **COMPLAINT AND JURY DEMAND** |

## INTRODUCTION

1.    The United States of America (the "United States") brings this action against OceanFirst Bank, National Association ("OceanFirst" or the "Bank") under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and the Equal Credit

Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f, to remedy discrimination in OceanFirst's residential mortgage lending.

2.    The FHA and ECOA prohibit creditors, such as banks, from discriminating in home loans on the basis of race, color, national origin, and other characteristics.  Under the FHA, it is unlawful to discriminate against any person in making available residential real estate-related credit transactions, in making available or denying a dwelling, and in the terms, conditions, or privileges of sale of a dwelling or the provision of services in connection with such a sale, on the basis of race, color, national origin, and other characteristics.   42 U.S.C. §§ 3604(a)–(b), 3605(a).  ECOA and its implementing regulation, Regulation B, 12 C.F.R. pt. 1002, make it unlawful for a creditor to discriminate against an applicant in any aspect of a credit transaction on the basis of race, color, national origin, or other prohibited bases.  ECOA and Regulation B also prohibit any statements, acts, or practices that would discourage on a prohibited basis a prospective applicant from applying for credit.   15 U.S.C. § 1691(a); 12 C.F.R. § 1002.4(b); 12 C.F.R. pt. 1002, Supp. I, ¶ 4(b)(1).

3.    "Redlining" is one type of discrimination prohibited under the FHA and ECOA.  Redlining occurs when lenders discourage loan applications, deny equal access to home loans and other credit services, or avoid providing home loans and other credit services to neighborhoods based on the race, color, or national origin of the residents of those neighborhoods.

4.    From 2018 through at least 2022 (the "Relevant Time Period"),

OceanFirst engaged in a pattern or practice of unlawful redlining. As alleged in detail herein, OceanFirst avoided providing home loans and other mortgage services in majority-Black, Hispanic, and Asian neighborhoods in three counties in central New Jersey: Middlesex County, Monmouth County, and Ocean County (together, the "New Brunswick Lending Area"). OceanFirst thereby discriminated against applicants and prospective applicants living in, or seeking credit to purchase properties in, majority-Black, Hispanic, and Asian neighborhoods in the New Brunswick Lending Area. OceanFirst also engaged in acts or practices directed at applicants and prospective applicants that discouraged those living in, or seeking credit to purchase properties in, these neighborhoods from seeking or applying for credit from OceanFirst.

5.    During the Relevant Time Period, OceanFirst's redlining practices included:

    a.    Concentrating its physical locations in majority-white areas and closing its few locations in majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area;

    b.    Exiting Middlesex County, which contains the overwhelming majority of the Black, Hispanic, and Asian communities in the New Brunswick Lending Area;

    c.    Largely excluding majority-Black, Hispanic, and Asian neighborhoods from its Community Reinvestment Act Assessment Area as well as from its marketing and outreach

efforts; and

    d.    Failing to implement adequate fair lending policies and procedures to ensure the Bank was positioned to provide equal access to credit to majority-Black, Hispanic, and Asian neighborhoods, particularly as the Bank expanded its presence in the New Brunswick Lending Area and throughout New Jersey.

6.    As a result of these practices, OceanFirst generated disproportionately low numbers of loan applications and home loans from majority-Black, Hispanic, and Asian neighborhoods in the New Brunswick Lending Area compared to similarly situated lenders.

7.    OceanFirst's conduct and practices were intended to deny, and had the effect of denying, equal access to home loans for those residing in, or seeking credit for properties located in, majority-Black, Hispanic, and Asian neighborhoods, and otherwise discouraged such individuals from applying for home loans on the basis of the race, color, or national origin of the residents of those neighborhoods.

8.    OceanFirst's conduct and practices reinforced and perpetuated segregated housing patterns because of race, color, or national origin. OceanFirst's conduct was not justified by a legitimate, nondiscriminatory reason or business necessity and was not necessary to achieve a substantial, legitimate, nondiscriminatory interest.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction over this action.  The action arises under federal laws, 42 U.S.C. § 3614(a), 15 U.S.C. § 1691e(h); it presents a federal question, 28 U.S.C. § 1331; and the United States brings this action as plaintiff, 28 U.S.C. § 1345.

10.     Venue is proper in this district under 28 U.S.C. § 1391 because OceanFirst's principal place of business is located within this judicial district and OceanFirst conducts business in, and a substantial part of the events or omissions giving rise to the claims occurred in, this judicial district.

## PARTIES

11.     The United States brings this action to enforce the provisions of the FHA and ECOA.  The FHA and ECOA authorize the Attorney General to bring a civil action in federal district court whenever he has reason to believe that an entity is engaged in a pattern or practice of resistance to the full enjoyment of rights secured by the FHA and ECOA.  42 U.S.C. § 3614(a); 15 U.S.C. § 1691e(h).  The FHA further authorizes the Attorney General to bring suit when the defendant has denied rights to a group of persons and that denial raises an issue of general public importance.  42 U.S.C. § 3614(a).

12.     Defendant OceanFirst is a bank headquartered in Toms River, New Jersey that offers lending, depository, and related financial services throughout New Jersey.  As of December 31, 2022, the Bank operated thirty-eight full-service branches, including seventeen in the New Brunswick Lending Area.  As of December

31, 2022, OceanFirst had total assets of $13.1 billion.

13.    As a national bank, the OceanFirst is subject to the regulatory authority of the Office of the Comptroller of the Currency (the "OCC"). Because its assets exceed $10 billion, the Bank is also subject to the regulatory authority of the Consumer Financial Protection Bureau.

14.    OceanFirst is subject to the FHA, ECOA, and their respective implementing regulations, 24 C.F.R. pt. 100, and Regulation B.

15.    OceanFirst is a "creditor" within the meaning of ECOA, 15 U.S.C. § 1691a(e), and is an entity whose business includes engaging in "residential real estate-related transactions" under the FHA, 42 U.S.C. § 3605.

16.    OceanFirst originates mortgages for properties that are "dwellings" under the FHA, 42 U.S.C. § 3602(b).

## FACTUAL ALLEGATIONS

### The OCC's Referral and the United States' Investigation

17.    In October 2021, the OCC initiated a fair lending examination of OceanFirst for potential redlining in Middlesex, Monmouth, and Ocean counties from 2017 to 2019.

18.    After completing its examination and statistical analysis, the OCC concluded it had information suggesting that OceanFirst violated the FHA, 42 U.S.C. §§ 3604(b) and 3605, and its implementing regulation, 24 C.F.R. Part 100, by engaging in a pattern or practice of illegal credit discrimination on the prohibited basis of race, color, and national origin by redlining in Middlesex, Monmouth, and Ocean counties.

19.     On December 19, 2022, the OCC made a notification of this matter to the Department of Justice under the FHA.

20.     On February 17, 2023, the United States informed OceanFirst that it was opening an investigation into whether the Bank had engaged in unlawful redlining in violation of ECOA, 15 U.S.C. §§ 1691-1691f, and the FHA, 42 U.S.C. §§ 3601-3619.

**The New Brunswick Lending Area**

21.     Since September 2018, the three counties of the New Brunswick Lending Area, Middlesex, Monmouth, and Ocean counties, have been part of the New Brunswick-Lakewood Metro Division.[1]

22.     The New Brunswick Lending Area has over 2.1 million residents. According to data from the United States Census Bureau, in 2020, the region was 61% non-Hispanic white ("white"), 6.3% non-Hispanic Black ("Black"), 15.9% Hispanic or Latino, and 12.8% Asian.  Middlesex County is the most racially diverse county in the New Brunswick Lending Area.

23.     According to the United States Census Bureau, 25% of all census tracts in the New Brunswick Lending Area are majority-Black, Hispanic, and Asian communities.  Those tracts are overwhelmingly located in Middlesex County.  Of the 129 majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area, 84% are in Middlesex County, 16% are in Monmouth County, and 0%

---

[1] The New Brunswick-Lakewood Metro Division also includes Somerset County. Before September 2018, Middlesex, Monmouth, and Ocean counties were part of the New York-Jersey City-White Plains Metro Division and Somerset County was part of the Newark Metro Division.

are in Ocean County.

24.    As used in this complaint, a "majority-Black, Hispanic, and Asian" tract is one in which more than 50% of the residents are identified as either "Black or African American," "Hispanic or Latino," or "Asian" by the United States Census Bureau. A "majority-white" tract is one in which more than 50% of the residents are identified as "non-Hispanic white" by the United States Census Bureau.[2]

25.    The United States' claims are limited to Middlesex, Monmouth, and Ocean counties in New Jersey (the "New Brunswick Lending Area").

### OceanFirst Acquired and Then Closed Multiple Locations in Majority-Black, Hispanic, and Asian Census Tracts

26.    OceanFirst was established in 1902 and, for many years, mostly operated in the predominantly white communities of Ocean and Monmouth counties. In 2016, the Bank began to expand beyond these markets through its acquisition of other banks. That expansion brought more diverse counties into OceanFirst's service area.

27.    In the New Brunswick Lending Area, OceanFirst expanded through its 2018 acquisition of Sun National Bank and its 2020 acquisition of Two River Community Bank.

28.    Before OceanFirst acquired Sun National Bank, OceanFirst operated twenty-two branches in the New Brunswick Lending Area. *See* Exhibit A (depicting

---

[2] The complaint uses "majority-Black, Hispanic, and Asian census tract," "majority-Black, Hispanic, and Asian," and "majority-Black, Hispanic, and Asian neighborhood" interchangeably. The complaint does the same for "majority-white census tract," "majority-white area," and "majority-white neighborhood."

OceanFirst's locations in the New Brunswick Lending Area from 2018 to 2022). All but one of those branches were in majority-white census tracts. During the Relevant Time Period, OceanFirst acquired twenty-one additional branches and two loan production offices in the New Brunswick Lending Area. Three of the acquired locations were in majority-Black, Hispanic, and Asian census tracts.

29.    As a result, OceanFirst had four locations in majority-Black, Hispanic, and Asian census tracts during the Relevant Time Period. Two of those locations were in Middlesex County and two in Monmouth County. By 2022, Ocean First had closed all four of those locations and had no branches or loan production offices in majority-Black, Hispanic, and Asian communities in the New Brunswick Lending Area.

30.    By concentrating virtually all of its locations in majority-white census tracts, and then closing its few locations in majority-Black, Hispanic, and Asian census tracts, OceanFirst discouraged residents of, or those seeking credit for properties located in, majority-Black, Hispanic, and Asian neighborhoods from applying for and obtaining home loans and restricted their access to the Bank's credit and mortgage lending services.

### OceanFirst Exited Middlesex County

31.    Before the Sun National acquisition, OceanFirst had a single branch in Middlesex County, located close to the Monmouth County border in a majority-white census tract.

32.    On January 31, 2018, OceanFirst acquired Sun National's two branches and one loan production office in Middlesex County. Two of those acquired

locations were in majority-Black, Hispanic, and Asian census tracts.

33.    After the Sun National acquisition, OceanFirst therefore had four locations in Middlesex County.  The Bank closed two of those locations, including one in a majority-Black, Hispanic, and Asian census tract, by the end of 2018.  It closed another branch in a majority-Black, Hispanic, and Asian census tract in 2019 and the final Middlesex branch in 2021.

34.    While Sun National did not have an active residential mortgage lending business at the time of its acquisition, OceanFirst had a long history of residential mortgage lending.  But instead of applying its expertise to invest in its Middlesex County locations, OceanFirst did not serve those customers, including those in majority-Black, Hispanic, and Asian neighborhoods, and resumed its focus on Monmouth County and Ocean County where nearly all census tracts are majority white.

35.    By closing all locations in the New Brunswick Lending Area's most diverse county, OceanFirst discouraged residents of, or those seeking credit for properties located in, majority-Black, Hispanic, and Asian neighborhoods from applying for and obtaining home loans and restricted their access to the Bank's credit and mortgage lending services.

### OceanFirst's Assessment Area Excluded Almost All of the Majority-Black, Hispanic, and Asian Census Tracts in the New Brunswick Lending Area Until 2020

36.    As a depository bank, OceanFirst is subject to the requirements of the Community Reinvestment Act ("CRA"), 12 U.S.C. §§ 2901–2908, and its enabling regulation, 12 C.F.R. Part 25, which require covered banks to meet the credit needs

of the communities that they serve. Each bank subject to the CRA self-identifies the communities that it serves in the bank's "assessment areas." Under the CRA, during the Relevant Time Period, a bank covered by the CRA had to maintain an assessment area that consisted of one or more metropolitan areas or "one or more contiguous political subdivisions, such as counties, cities, or towns." 12 C.F.R. § 25.41(c)-(e) (2018). Federal regulators look at a bank's assessment area in evaluating whether an institution is meeting the credit needs of its entire community.

37.    As of January 1, 2018, OceanFirst's self-designated assessment area in the New Brunswick Lending Area consisted of Monmouth County, Ocean County, and ten census tracts in Middlesex County.

38.    Of the ten Middlesex County census tracts in OceanFirst's assessment area in early 2018, none were in majority-Black, Hispanic, and Asian census tracts.

39.    On January 31, 2018, OceanFirst acquired Sun National Bank, which had a substantial existing presence in Middlesex County. Sun National's assessment area included the entirety of Middlesex County.

40.    At the time of the January 31, 2018, acquisition, OceanFirst's stated policy was to incorporate into its assessment area the full assessment area of the acquired bank. Had OceanFirst adhered to this policy, it would have added Middlesex County to its assessment area. Instead, OceanFirst added only two, non-contiguous census tracts in Middlesex County to its assessment area. The added census tracts contained two of the three acquired locations. *See* Exhibit B (depicting

OceanFirst's Assessment Area from January 31, 2018, to December 31, 2019).

41.    Even after the Sun National acquisition, which expanded OceanFirst's presence well beyond the southeastern corner of Middlesex County, OceanFirst did not add the full county to its assessment area until January 2, 2020, nearly two years later.  As a result, during that period, the Bank excluded all but two of Middlesex County's ninety-two majority-Black, Hispanic, and Asian census tracts from its assessment area.

## OceanFirst Conducted Minimal Outreach and Advertising to Majority-Black, Hispanic, and Asian Neighborhoods

42.    During the Relevant Time Period, OceanFirst relied primarily on its mortgage loan officers to develop referral sources, conduct outreach to potential customers, and distribute marketing materials related to the Bank's residential mortgage lending services.

43.    OceanFirst assigned almost all of its mortgage loan officers in the New Brunswick Lending Area to serve specific branches.  For most of the Relevant Time Period, mortgage loan officers were not otherwise assigned to specific territories.  As the Bank closed its locations in Middlesex County and in majority-Black, Hispanic, and Asian census tracts, loan officers were no longer assigned to those locations and no loan officers were responsible for soliciting mortgage loans from those areas until the summer of 2022, when the Bank added a new loan officer position.  As a result, there was minimal outreach to majority-Black, Hispanic, and Asian communities during the Relevant Time Period.  The Bank's loan officer call logs for 2022, for instance, reflect that the vast majority of loan officer outreach attempts were

directed toward the predominantly white Monmouth and Ocean counties.

44.    In the majority-white neighborhoods in the New Brunswick Lending Area, where mortgage loan officers were assigned to serve branch offices, residential mortgage lending services were available to walk-in customers.  These services were not available in majority-Black, Hispanic, and Asian neighborhoods in the New Brunswick Lending Area.

45.    OceanFirst took no meaningful steps to supplement the absence of branches and loan officers in Middlesex County with marketing or community outreach comparable to the Bank's efforts in Monmouth and Ocean counties.  On average, the Bank earmarked far more marketing money during the Relevant Time Period for branches located in majority-white neighborhoods of Monmouth and Ocean counties than for branches located in Middlesex County or in majority-Black, Hispanic, and Asian neighborhoods.

46.    OceanFirst's mortgage loan officers served the credit needs of majority-white neighborhoods but did not serve the credit needs of majority-Black, Hispanic, and Asian neighborhoods in the New Brunswick Lending Area during the Relevant Time Period.

**OceanFirst's Inadequate Internal Fair Lending Monitoring**

47.    During the Relevant Time Period, the Bank's internal fair lending policies and procedures were inadequate to ensure that the Bank was positioned to provide equal access to credit to the majority-Black, Hispanic, and Asian neighborhoods in the New Brunswick Lending Area.  As OceanFirst expanded, it failed to implement internal fair lending monitoring that kept pace with the Bank's

size and service area.

48.    From 2018 to 2020, OceanFirst expanded its presence in the New Brunswick Lending Area by acquisition and then consolidated new branch locations with the Bank's existing branches.  But the Bank closed its locations in majority-Black, Hispanic, and Asian neighborhoods in Middlesex County even when it did not have other branches nearby.  The Bank had no written acquisition or branch closure policy that required consideration of fair lending compliance or potential redlining. As a result, OceanFirst closed the four New Brunswick Lending Area locations that were in majority-Black, Hispanic, and Asian neighborhoods without any meaningful consideration of its obligation to ensure equal access to credit.

49.    OceanFirst was aware of the inadequacy of its fair lending risk management as early as 2020, when an internal analysis shared with Bank leadership stated that the Bank's physical expansion had increased its fair lending risk but that risk management practices had failed to keep pace.  A 2020 internal audit shared with Bank leadership identified a lack of customer diversity, deficiencies in the Bank's marketing practices, and inadequate fair lending oversight by the Board.

50.    In 2021, the OCC concluded that OceanFirst's fair lending monitoring had failed to keep pace with the Bank's expansion.

51.    Though the Bank created internal committees and groups in response to these findings, the Bank failed to meaningfully reform its practices to increase access to credit in majority-Black, Hispanic, and Asian communities.  Many

recommendations of those groups were not followed, and other recommendations were not implemented until years after the Bank had become aware of the inadequacy of its fair lending risk management.

52.    OceanFirst itself has recognized its failure to reform its practices.  A February 2024 internal assessment of the Bank's internal fair lending monitoring practices found that the Bank's inability to "sufficiently communicate fair lending risk factors to the Board" created a high level of risk.

**Disproportionately Low Numbers of Home Loan Applications From Majority-Black, Hispanic, and Asian Neighborhoods in the New Brunswick Lending Area**

53.    OceanFirst's acts and lending policies and practices, including those alleged in Paragraphs 17 to 52, have discouraged applicants and prospective applicants in majority-Black, Hispanic, and Asian neighborhoods in the New Brunswick Lending Area from applying for home loans and other mortgage-related services.

54.    OceanFirst's own data on loan applications and originations that it is required to report to regulators under the Home Mortgage Disclosure Act of 1975 ("HMDA"), 12 U.S.C. §§ 2801–2811, confirms that OceanFirst has avoided serving majority-Black, Hispanic, and Asian neighborhoods.  *See* Exhibit C (depicting OceanFirst's applications from majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area from 2018 to 2022).

55.    During   the   Relevant   Time   Period,   OceanFirst   significantly underperformed its "peer lenders" in generating home loan applications from majority-Black, Hispanic, and Asian communities in the New Brunswick Lending

Area. "Peer lenders" are similarly situated financial institutions that received between 50 percent and 200 percent of the Bank's annual volume of home loan applications.

56.    The disparity between the rate of applications generated by OceanFirst and the rate generated by its peer lenders from majority-Black, Hispanic, and Asian areas is both statistically significant—meaning unlikely to be caused by chance— and sizable across the five-year Relevant Time Period.

57.    During the Relevant Time Period, OceanFirst received 4,975 HMDA-reportable mortgage loan applications within the New Brunswick Lending Area. Of those applications, 1.9% came from individuals seeking credit for properties located in majority-Black, Hispanic, and Asian census tracts. By contrast, during the same time period, OceanFirst's peers generated 17.4% of their 157,927 total applications from individuals seeking credit for properties located in these same majority-Black, Hispanic, and Asian census tracts.

58.    When disparities were calculated for individual years, OceanFirst's peers received applications at a rate between 8.7 and 11.1 times the rate of OceanFirst. These disparities are statistically significant in every year analyzed across the five-year Relevant Time Period.

59.    The statistically significant disparities between home loan applications OceanFirst generated from majority-Black, Hispanic, and Asian neighborhoods and those that its peers generated show that OceanFirst's low rate of applications in majority-Black, Hispanic, and Asian areas in the New Brunswick Lending Area

cannot be attributed to a lack of individuals seeking credit for properties located in those areas. OceanFirst had no legitimate, nondiscriminatory reason to draw so few applications from these areas.

60. These figures show a statistically significant failure by OceanFirst, relative to its peer lenders, to draw home loan applications from and provide residential mortgage services to residents of, and those seeking credit for properties located in, majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area on a nondiscriminatory basis during the Relevant Time Period.

**OceanFirst Originated a Disproportionately Low Number of Home Loans in Majority-Black, Hispanic, and Asian Neighborhoods in the New Brunswick Lending Area**

61. In addition to discouraging applicants and prospective applicants from applying for home loans, OceanFirst's acts and lending policies and practices, including those alleged in Paragraphs 17 to 60, have also discouraged applicants and prospective applicants in majority-Black, Hispanic, and Asian neighborhoods from obtaining home loans and other mortgage-related services. As a result, OceanFirst made a smaller percentage of HMDA-reportable residential mortgage loans in these neighborhoods compared to its peers from 2018 through 2022. *See* Exhibit D (depicting loan originations from majority-Black, Hispanic, and Asian tracts in the New Brunswick Lending Area from 2018 to 2022).

62. From 2018 to 2022, OceanFirst made 3,576 HMDA-reportable residential mortgage loans in the New Brunswick Lending Area. Of those loans, 1.9% were made to residents of majority-Black, Hispanic, and Asian census tracts. By contrast, OceanFirst's peers made 16.2% of their 96,339 total HMDA-reportable

residential mortgage loans in the same area to residents of majority-Black, Hispanic, and Asian census tracts—more than eight times the rate of OceanFirst.

63.    When disparities were calculated for individual years, OceanFirst's peers made loans at a rate between 6.7 and 9.7 times the rate of OceanFirst.  The disparities are statistically significant for each individual year across the five-year Relevant Time Period.

64.    The statistically significant disparities between the number of home loans OceanFirst made to majority-Black, Hispanic, and Asian neighborhoods and those that its peers made show that OceanFirst's low rate of lending in majority-Black, Hispanic, and Asian areas in the New Brunswick Lending Area cannot be attributed to a lack of individuals seeking credit for properties located in those areas. OceanFirst had no legitimate, nondiscriminatory reason to make so few home loans from these areas.

65.    These figures show a statistically significant failure by OceanFirst, relative to its peer lenders, to make home loans and provide residential mortgage services to residents of, and those seeking credit for properties located in, majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area on a nondiscriminatory basis during the Relevant Time Period.

66.    OceanFirst's discriminatory practices as described herein were intended to discriminate and have had the effect of discriminating on the basis of race, color, and national origin.

## COUNT I – VIOLATION OF THE FAIR HOUSING ACT

67.   The United States incorporates all prior paragraphs of the Complaint as if fully set forth herein.

68.   OceanFirst's policies and practices constitute the unlawful redlining of majority-Black, Hispanic, and Asian communities in the New Brunswick Lending Area on account of the racial and national origin composition of those communities. OceanFirst's policies and practices were intended to deny, and had the effect of denying, equal access to home loans to residents of majority-Black, Hispanic, and Asian communities and those seeking credit for properties located in those communities.  The Bank's conduct was not justified by a business necessity or legitimate business considerations.

69.   OceanFirst's actions as alleged herein constitute:

a.   Discrimination on the basis of race, color, and national origin in making available residential real estate-related transactions, or in the terms or conditions of residential real estate-related transactions, in violation of the Fair Housing Act, 42 U.S.C. § 3605(a), and its implementing regulations, 24 C.F.R. §§ 100.110(b), 100.120;

b.   The making unavailable or denial of dwellings to persons because of race, color, and national origin, in violation of the Fair Housing Act, 42 U.S.C. § 3604(a), and its implementing regulation, 24 C.F.R. § 100.50(b)(3); and

c.      Discrimination on the basis of race, color, and national origin in the terms, conditions, or privileges of the sale or rental of dwellings, or the provision of services or facilities in connection with the sale or rental of dwellings, in violation of the Fair Housing Act, 42 U.S.C. § 3604(b), and its implementing regulations, 24 C.F.R. §§ 100.50(b)(2), 100.65.

70.     OceanFirst's policies and practices as alleged herein constitute, in violation of 42 U.S.C. § 3614(a):

a.      A pattern or practice of resistance to the full enjoyment of rights secured by the FHA; and

b.      A denial of rights granted by the FHA to a group of persons that raises an issue of general importance.

71.     OceanFirst's pattern or practice of discrimination was intentional and willful and was implemented with reckless disregard for the rights of individuals based on their race, color, and national origin.

72.     Persons who have been victims of OceanFirst's discriminatory policies and practices are "aggrieved" as defined in 42 U.S.C. § 3602(i) and may have suffered damages as a result of the Bank's conduct in violation of the Fair Housing Act, as described above.

## COUNT II – VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT

73.     The United States incorporates all prior paragraphs of the Complaint as if fully set forth herein.

74.    OceanFirst's policies and practices as alleged herein constitute unlawful discrimination against applicants and prospective applicants, including by redlining majority-Black, Hispanic, and Asian communities in the New Brunswick Lending Area and engaging in acts and practices directed at prospective applicants that would discourage prospective applicants from applying for credit on the basis of race, color, and national origin in violation of ECOA and Regulation B.  15 U.S.C. §§ 1691-1691f; 12 C.F.R. § 1002.4(a)–(b).

75.    OceanFirst's policies and practices as alleged herein constitute a pattern or practice of discrimination and discouragement and resistance to the full enjoyment of rights secured by the Equal Credit Opportunity Act, 15 U.S.C. § 1691e(h).

76.    OceanFirst's pattern or practice of discrimination was intentional and willful and was implemented with reckless disregard for the rights of individuals based on their race, color, and national origin.

77.    Persons who have been victims of OceanFirst's discriminatory policies and practices are aggrieved  and may have suffered damages as a result of the Bank's conduct in violation of the Equal Credit Opportunity Act, as described above.

## REQUEST FOR RELIEF

WHEREFORE, the United States requests that the Court enter an order that:

(1)    Declares that the conduct of Defendant OceanFirst violates the Fair Housing Act;

(2)    Declares that the conduct of Defendant OceanFirst violates the Equal

Credit Opportunity Act;

(3)    Enjoins Defendant, its officers, agents, servants, employees, assignees, and successors in interest, and all other persons in active concert or participation with Defendant, from:

A.    Discriminating on account of race, color, or national origin in any aspect of their lending business practices;

B.    Discouraging applicants or prospective applicants on account of race, color, or national origin;

C.    Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendant's unlawful practices to the position they would be in but for the discriminatory conduct; and

D.    Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of Defendant's unlawful practices, and providing policies and procedures to ensure all segments of Defendant's market areas are served without regard to prohibited characteristics;

(4)    Awards monetary damages against Defendant in accordance with 42 U.S.C. § 3614(d)(1)(B) and 15 U.S.C. § 1691e(h);

(5)    Assesses a civil penalty against Defendant in an amount authorized by 42 U.S.C. § 3614(d)(1)(C), in order to vindicate the public interest; and

(6)   Awards the United States any additional relief the interests of justice may require.

## JURY DEMAND

The United States demands a trial by jury of all issues triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:  September 18, 2024

Respectfully submitted,


MERRICK B. GARLAND
Attorney General

| | |
|---|---|
| PHILIP R. SELLINGER | KRISTEN CLARKE |
| United States Attorney | Assistant Attorney General |
| | Civil Rights Division |

<table>
<tr><td><u>*s/ Susan Millenky*</u></td><td><u>*s/ Nathan Shulock*</u></td></tr>
<tr><td>MICHAEL E. CAMPION</td><td>CARRIE PAGNUCCO</td></tr>
<tr><td>Chief</td><td>Chief</td></tr>
<tr><td>SUSAN MILLENKY</td><td>JENNIFER A. SLAGLE PECK</td></tr>
<tr><td>Assistant U.S. Attorney</td><td>Deputy Chief</td></tr>
<tr><td>Civil Rights Division</td><td>MARTA CAMPOS</td></tr>
<tr><td>U.S. Attorney's Office</td><td>NATHAN SHULOCK</td></tr>
<tr><td>970 Broad Street</td><td>Trial Attorneys</td></tr>
<tr><td>Newark, NJ 07102</td><td>Housing & Civil Enforcement Section</td></tr>
<tr><td>Phone: (973) 645-2700</td><td>950 Pennsylvania Ave. NW – 4CON</td></tr>
<tr><td>Fax: (973) 297-2010</td><td>Washington, DC 20530</td></tr>
<tr><td>Email:</td><td>Phone: (202) 514-4713</td></tr>
<tr><td>susan.millenky@usdoj.gov</td><td>Fax: (202) 514-1116</td></tr>
<tr><td></td><td>E-mails:</td></tr>
<tr><td></td><td>marta.campos@usdoj.gov</td></tr>
<tr><td></td><td>nathan.shulock@usdoj.gov</td></tr>
</table>


*Attorneys for Plaintiff United States of America*