UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> OCEANFIRST BANK, NATIONAL ASSOCIATION, <br><br> *Defendant.* | Civil Action No. 3:24-cv-09248 |

## CONSENT ORDER

## I.   INTRODUCTION

The Parties jointly submit this Consent Order for approval and entry by the Court.   The Consent Order resolves all claims of the United States of America simultaneously filed in a Complaint, alleging that from 2018 through 2022, OceanFirst Bank, National Association ("OceanFirst" or "the Bank") engaged in a pattern or practice of unlawful redlining in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f, and Regulation B, 12 C.F.R. §§ 1002.1–1002.16, by discriminating on the basis of race, color, and national origin.   Specifically, the United States alleges that OceanFirst engaged in illegal redlining by avoiding providing home loans and other mortgage services in majority-Black, Hispanic, and Asian census tracts in Middlesex County, Monmouth County, and Ocean County, New Jersey (together, the "New Brunswick Lending Area") and OceanFirst engaged in conduct that would discourage mortgage applications from applicants and prospective applicants who are

residents of, or seeking credit in, majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area.

OceanFirst neither admits nor denies these claims. OceanFirst asserts that throughout the period of time at issue in this proceeding and to the present, it has treated all of its customers fairly and without regard to impermissible factors such as race, color and national origin. OceanFirst also asserts that it enters into this settlement solely for the purpose of avoiding contested litigation with the United States, and to instead devote its resources to providing fair and equal access to residential lending services in the New Brunswick Lending Area.

The Court has jurisdiction over the Parties and subject matter of this action. There have been no factual findings or adjudication in this case. The Parties enter into this Consent Order to voluntarily resolve all claims arising from the conduct alleged in the Complaint. Entry of this Consent Order is in the public interest. The Parties agree that the goal of this Consent Order is to increase access to credit in majority-Black, Hispanic, and Asian neighborhoods in the New Brunswick Lending Area and that the full implementation of the terms in this Consent Order will provide a resolution to the claims asserted in the Complaint in a manner consistent with OceanFirst's legitimate business interests.

## II.    BACKGROUND

OceanFirst is a bank headquartered in Toms River, New Jersey that has offered lending, depository, and related financial services throughout New Jersey. As of December 31, 2022, the Bank operated thirty-eight full-service branches,

including seventeen in the New Brunswick Lending Area. As of December 31, 2022, OceanFirst's total assets equaled $13.1 billion.

As a national bank, OceanFirst is subject to the regulatory authority of the Office of the Comptroller of the Currency (the "OCC"). Because its assets exceed $10 billion, the Bank is also subject to the regulatory authority of the Consumer Financial Protection Bureau. In October 2021, the OCC initiated a fair lending examination of OceanFirst for potential redlining in Middlesex, Monmouth, and Ocean counties from 2017 to 2019. After completing its examination and statistical analysis, the OCC concluded it had information suggesting that OceanFirst violated the FHA, 42 U.S.C. §§ 3604(b) and 3605, and its implementing regulation, 24 C.F.R. Part 100, by engaging in a pattern or practice of illegal credit discrimination on the prohibited basis of race, color, and national origin by redlining in those counties. On December 19, 2022, the OCC made a notification of this matter to the Department of Justice under the FHA. On February 17, 2023, the United States informed OceanFirst that it was opening an investigation into whether the Bank had engaged in unlawful redlining in violation of ECOA and the FHA.

After conducting its investigation and reviewing the information provided by the Bank, the United States contends that, from 2018 through at least 2022, OceanFirst avoided serving the credit needs of borrowers residing and seeking credit in majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area and discouraged those borrowers from obtaining mortgage loans, while acting to serve the credit needs of borrowers in majority-white census tracts.

III.  **DEFINITIONS**

For purposes of this Order:

a.  The "**Effective Date**" is the date that this Order is entered by the Court.

b.  The "**New Brunswick Lending Area**" consists of Middlesex County, Monmouth County, and Ocean County, New Jersey.

c.  A "**majority-Black, Hispanic, and Asian census tract**" is a tract within the New Brunswick Lending Area where more than fifty percent of the residents identify themselves to the United States Census Bureau as either "Black or African American," "Hispanic or Latino," or "Asian."

d.  A "**majority-white census tract**" is a tract within the New Brunswick Lending Area where more than fifty percent of the residents identify themselves to the United States Census Bureau as "non-Hispanic white."

e.  "**Residential mortgage credit**" is credit secured by a residential property that will serve as the borrower's primary residence, including home purchase, home refinance, and home improvement loans as well as home equity loans and lines of credit.

IV.  **TERMS OF THE ORDER**

A.  **Lending Practices**

1.  OceanFirst, including all of its officers, agents, servants, employees, and all other persons in active concert or participation with them who have actual notice of this Order, assignees, and successors in interest, is hereby enjoined from engaging in any act or practice that discriminates on the basis of race, color, or national origin

4

that: (a) violates the FHA in any aspect of a residential real estate-related transaction, or (b) violates ECOA and Regulation B in any aspect of a credit transaction.

2.    OceanFirst will ensure that it offers and provides all persons with an equal opportunity to apply for and obtain credit, regardless of the demographic composition of the area in which a person lives or the location of the property securing the loan.

**B.    Community Credit Needs Assessment and Remedial Plan**

3.    OceanFirst will submit to the United States for non-objection a Community Credit Needs Assessment for majority-Black, Hispanic, and Asian census tracts within the New Brunswick Lending Area.   A Community Credit Needs Assessment is a research-based market study to help a lender identify the needs for financial services in an area.

4.    OceanFirst will consider the Community Credit Needs Assessment when carrying out all provisions of this Order, including Subsections IV.F. through IV.I.

5.    This Community Credit Needs Assessment must include the following information about residential mortgage credit and majority-Black, Hispanic, and Asian census tracts within the New Brunswick Lending Area:

a.    an evaluation (to include market research and interviews) of credit needs and current lending opportunities available in these census tracts;

b.    recent demographic, socioeconomic, and language data;

5

c.   potential strategies for OceanFirst to provide residential mortgage products and lending services in these census tracts;

d.   an assessment as to where marketing materials and loan origination materials are needed in languages other than English;

e.   an assessment of potential appropriate locations and hours of operation for the new loan production office in these census tracts;

f.   a review of residential mortgage products and lending services offered by other lenders and their success in the market;

g.   an overview of federal, state, and local programs that are available to residents in the New Brunswick Lending Area seeking and obtaining residential mortgage loans; and

h.   recommendations that address how the requirements of Subsections IV.F. through IV.I. of the Order should be carried out to best achieve the remedial goals of this Order.

6.    The Community Credit Needs Assessment will be conducted by an independent, qualified third-party consultant selected by OceanFirst and subject to non-objection by the United States. Within thirty days of the Effective Date, OceanFirst will submit to the United States for non-objection the qualifications of the third-party consultant and a statement of work from the consultant describing their methodology for the assessment. OceanFirst will bear all costs associated with the consultant.

7.    Within sixty days of receiving the United States' non-objection to the third-party consultant and the statement of work, OceanFirst will submit to the United States the Community Credit Needs Assessment described in this Subsection.

8.    Within thirty days of the United States' non-objection to the Community Credit Needs Assessment, OceanFirst will present the Assessment to all OceanFirst senior management, employees, and committees responsible for overseeing fair lending compliance.  OceanFirst will certify its compliance with this requirement as part of its annual reporting requirement under Subsection V.B.

9.    Within ninety days of receiving non-objection from the United States to the Community Credit Needs Assessment, OceanFirst will submit a remedial plan that details, in light of the recommendations made in the Assessment, the actions OceanFirst proposes to take to comply with the requirements of this Order (*e.g.*, physical expansion, loan subsidy fund, community partnerships, advertising, outreach, consumer financial education, and credit counseling), including implementation plans, specific timeframes for these actions, and the employee(s) responsible for implementation ("Remedial Plan").

10.    The Remedial Plan is subject to non-objection by the United States.  If the United States objects to any portion of the Remedial Plan, OceanFirst will make revisions and resubmit its plan within thirty days of receiving the United States' objection.  OceanFirst will begin implementation of its Remedial Plan within thirty days of receiving non-objection from the United States.

C.    **Fair Lending Compliance**

11.    OceanFirst will have a detailed assessment conducted of the Bank's fair

lending program as it relates to fair lending obligations and lending in majority-Black, Hispanic, and Asian census tracts. OceanFirst must produce a written report ("Fair Lending Status Report and Compliance Plan") containing the results of this assessment.

12.     OceanFirst will select and retain an independent, qualified third-party consultant ("Fair Lending Consultant") to conduct the fair lending program assessment and draft the Fair Lending Status Report and Compliance Plan. OceanFirst will bear all costs associated with the consultant.

13.     Within thirty days of the Effective Date, OceanFirst will submit the qualifications of the proposed Fair Lending Consultant to the United States. If the United States objects to the proposed Fair Lending Consultant, within thirty days of the United States' objection, OceanFirst will identify and propose a new Fair Lending Consultant and submit their qualifications to the United States for non-objection.

14.     Within ninety days of the United States' non-objection to Fair Lending Consultant, OceanFirst will submit to the United States the Fair Lending Status Report and Compliance Plan.

15.     The Fair Lending Status Report and Compliance Plan must include a review of the Bank's existing fair lending policies and practices and an analysis of the Bank's policies and practices related to the location of branches and loan production offices; loan officers' solicitation of applications, training, oversight, and compensation; marketing; and fair lending compliance monitoring, including statistical monitoring of redlining risk in residential lending.

16.    The Fair Lending Status Report and Compliance Plan will also specifically include the status of progress relating to, at least:

a.    the steps OceanFirst has taken to revise the Bank's mortgage lending policies and practices that pose redlining risks, including at a minimum, risk that may arise from the location of branches and loan production offices, closures of branches and loan production offices, assignment of loan officers to physical locations, types of loan products, and marketing;

b.    the adoption of written policies and procedures regarding the Bank's marketing, as well as the training and monitoring of its loan officers in marketing, soliciting, and originating mortgage loan products;

c.    any changes to OceanFirst's formal process for ongoing statistical monitoring of redlining risk in residential lending, including statistical peer analysis of applications and originations from majority-Black, Hispanic, and Asian census tracts, and for responding to any identified risks;

d.    any changes made to the reporting process of the Compliance Department to senior management and the Board of Directors once redlining risk in residential lending has been identified and the remediation process to address such risk; and

e.    any additional steps OceanFirst will take to promptly revise its

mortgage lending policies and practices to mitigate residential lending redlining risk and help ensure compliance with the FHA and ECOA.

17.    If the United States objects to any portion of OceanFirst's Fair Lending Status Report and Compliance Plan, OceanFirst will make revisions and resubmit its proposal within thirty days of receiving the objection. OceanFirst will begin implementing its Fair Lending Status Report and Compliance Plan within fourteen days of receiving the United States' non-objection. Any material changes to OceanFirst's Fair Lending Status Report and Compliance Plan are subject to non-objection by the United States.

### D.    Fair Lending Training

18.    Within thirty days of the Effective Date, OceanFirst will provide a copy of the Complaint and Order in this matter to all employees involved in mortgage lending, marketing, fair lending or Community Reinvestment Act ("CRA") compliance in the New Brunswick Lending Area, or who have management responsibility over such employees; senior management with fair lending and marketing oversight; and members of the Board of Directors (collectively, "Relevant Staff and Officials"). OceanFirst will provide an opportunity for Relevant Staff and Officials to ask any questions concerning the Complaint and this Order, and OceanFirst will provide answers. OceanFirst will implement a system for everyone to acknowledge that they received a copy of the Complaint and this Order, had the opportunity to ask questions, and received answers. As part of its annual reporting requirements under Subsection V.B., OceanFirst will provide a report to the United States that includes these dated

10

acknowledgements, a list of all Relevant Staff and Officials and their titles, and a list of individuals to whom this Order was delivered and their titles.

19.    Each year throughout the term of this Order, OceanFirst will provide live and interactive training to Relevant Staff and Officials on OceanFirst's obligations under ECOA, Regulation B, and the FHA. The training will also include a module on redlining, the allegations in the Complaint, and OceanFirst's obligations under this Order ("fair lending training"). The fair lending training will be conducted by a qualified trainer selected by OceanFirst and subject to non-objection by the United States. OceanFirst will bear all costs associated with the training.

20.    Within thirty days of the Effective Date, OceanFirst will submit the qualifications of the trainer to the United States for non-objection. Within thirty days of receiving non-objection from the United States regarding the selected trainer, OceanFirst will submit the proposed fair lending training curricula, including materials, and anticipated run time, to the United States for non-objection. Within sixty days of the United States' non-objection to the training curricula, OceanFirst will deliver the fair lending training to all Relevant Bank Staff and Officials. OceanFirst will implement a system for each individual to acknowledge that they completed fair lending training within the required sixty days. As part of its annual reporting requirements under Subsection V.B., OceanFirst will provide a report to the United States that includes the dated acknowledgements required in this Paragraph for the prior year, a list of Relevant Staff and Officials who were required

to complete the training and their titles, and the date(s) on which Relevant Staff and Officials completed the training.

21.    OceanFirst will notify the United States, in writing, of any revisions to the curricula or changes to the trainer.  All such changes are subject to non-objection by the United States.

22.    Each time that an individual becomes a Relevant Staff or Official, OceanFirst will provide the Complaint, this Order, and the fair lending training discussed in Paragraph 19 within thirty days.  For these trainings, OceanFirst may use recorded versions of the most recent live and interactive training referenced in Paragraph 19.  As part of its annual reporting requirements under Subsection V.B., OceanFirst will report to the United States the new Relevant Staff and Officials' relevant acknowledgements described in this Subsection, a list of new Relevant Staff and Officials and their titles, and the dates on which new Relevant Staff and Officials received the Complaint, this Order, and the fair lending training.

### E.    Director of Community Lending

23.    Within 120 days of the Effective Date, OceanFirst will hire or designate an employee for a new full-time position of Director of Community Lending with the responsibility of overseeing the development of OceanFirst's lending in majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area and the Bank's compliance with this Order.  OceanFirst will ensure this position is filled throughout the term of this Order. Within 135 days of the Effective Date, OceanFirst will notify the United States of its compliance with this Paragraph, including the identity of the appointed Director.  If a new Director of Community Lending is

appointed at any time during the term of this Order, OceanFirst will notify the United States in writing within ten days of the staffing change.

24.     The Director of Community Lending will be a senior executive that reports directly to OceanFirst's President of Residential and Consumer Lending. The Director of Community Lending will devote at least half their time to the responsibilities outlined in this Subsection.

25.     The Director of Community Lending will provide at least quarterly reports to OceanFirst's Bank's Board of Directors and President on the steps the Bank has taken and plans to take to comply with this Consent Order. The Bank will attach those quarterly updates to each annual report to the United States required by this Consent Order. These quarterly updates to the Board will include, but are not limited to, the following:

    a.    implementing and administering all aspects of OceanFirst's compliance with this Order;

    b.    monitoring loan officers' solicitation and origination of loans in majority-Black, Hispanic, and Asian census tracts, including use of the loan subsidy fund described herein;

    c.    coordinating the Bank's involvement in community lending initiatives and outreach programs within majority-Black, Hispanic, and Asian census tracts;

    d.    encouraging and developing more lending within majority-Black, Hispanic, and Asian census tracts;

e.   promoting financial education to residents of majority-Black, Hispanic, and Asian census tracts;

f.   providing financial counseling to residents of majority-Black, Hispanic, and Asian census tracts; and

g.   building relationships with community groups within majority-Black, Hispanic, and Asian census tracts.

**F.   Physical Expansion in Majority-Black, Hispanic, and Asian Census Tracts**

26.    In December 2023, OceanFirst opened a branch at 133 Neilson Street, New Brunswick, New Jersey ("New Brunswick Branch").  This branch is located in a majority-Black, Hispanic, and Asian census tract in the New Brunswick Lending Area.  OceanFirst will also open a loan production office ("LPO") located in a majority-Black, Hispanic, and Asian census tract in the New Brunswick Lending Area.  The LPO will be in a retail-oriented space in a location visible from the street.  The specific site of the new LPO will be subject to non-objection by the United States.  OceanFirst will maintain the New Brunswick Branch and new LPO for the term of this Order.

27.    The new LPO will include a community meeting room large enough to accommodate financial education classes that OceanFirst will make available to the public and to community organizations.  The community meeting room will be advertised to the public and community organizations and will be made readily available for pre-scheduled uses by the public and community organizations.  The new LPO will also include an automatic teller machine ("ATM") that will not charge

fees to OceanFirst customers and will maintain lower fees for non-customers than what is available at nearby ATMs for non-customers.

28.    The New Brunswick Branch will offer OceanFirst's complete range of products and services. The LPO will offer OceanFirst's complete range of mortgage products. Both the New Brunswick Branch and the LPO will accept first-lien residential mortgage loan applications, have signage that is visible to the general public, and maintain hours of operation consistent with the hours maintained at OceanFirst's other full-service branches in the New Brunswick Lending Area. The New Brunswick Branch and the LPO will each be staffed by one or more full-time employee(s) trained to provide information and materials to customers and potential customers regarding all of the Bank's consumer lending and banking products and who will connect potential customers with a loan officer.

29.    OceanFirst will make reasonable efforts to open the new LPO within twelve months of the Effective Date. If OceanFirst fails to acquire or open the LPO within twelve months of the Effective Date, OceanFirst will provide to the United States a written report and proposal detailing the reason(s) it has not opened the LPO and describing how, and within what timeframe, it will comply with its obligations in Paragraphs 26, 27, and 28.

30.    OceanFirst will evaluate future opportunities for expansion within majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area, whether by merger, acquisition, or opening new branches or loan production offices. During the term of this Order, OceanFirst will notify the United States of

any plans to open or acquire any new branches or close branches within its New Brunswick Lending Area at the same time that it notifies regulators.

31. Within ninety days of the Effective Date, OceanFirst will assign or hire no fewer than two full-time loan officers or CRA loan officers to solicit mortgage applications primarily in majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area. OceanFirst will ensure that these loan officers have the opportunity to earn compensation similar to other OceanFirst loan officers and/or CRA loan officers who perform work outside of the majority-Black, Hispanic, and Asian census tracts. OceanFirst will make best efforts to ensure that the individuals assigned to the loan officer positions described in this Paragraph have ties to majority-Black, Hispanic, and Asian neighborhoods in the New Brunswick Lending Area or experience conducting outreach and generating loan applications in majority-Black, Hispanic, and Asian neighborhoods. Within 120 days of the Effective Date, OceanFirst will notify the United States of its compliance with this Paragraph, including the identity of the loan officers and their home office locations. OceanFirst will maintain this number of full-time mortgage loan officers focused on majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area for the term of this Order. The New Brunswick Branch and LPO required by this Subsection must each have at least one of the loan officers described in this Paragraph assigned to the location.

### G. Loan Subsidy Fund

32. OceanFirst will invest a minimum of $14,000,000 in a loan subsidy fund with the goal of increasing access to credit for home mortgage loans, home

improvement loans, and home refinance loans in majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area. This fund will be used solely to provide subsidies to consumers and will not be used for administrative costs of implementing the fund. No more than twenty-five percent of the loan subsidy fund may be used for home refinance loans.

33.     OceanFirst will use the loan subsidy fund to subsidize home mortgage, home improvement, and/or refinance loans made to "qualified applicants." A "qualified applicant" is anyone who qualifies for a loan under OceanFirst's underwriting standards and (a) applies for a mortgage for a residential property located in a majority-Black, Hispanic, and Asian census tract in the New Brunswick Lending Area that will serve as the applicant's primary residence, or (b) is qualified to participate in a Special Purpose Credit Program ("SPCP") consistent with the goals of this Consent Order and subject to the non-objection of the United States.

34.     Loan subsidies under the loan subsidy fund can be provided through any (or a combination) of the following means:

    a. originating a loan for a home purchase, refinancing, or home improvement at an interest rate below the otherwise prevailing market interest rate offered by OceanFirst;

    b. down payment assistance in the form of a direct grant;

    c. closing cost assistance in the form of a direct grant;

    d. payment of the initial mortgage insurance premium on loans subject to such mortgage insurance; and

e. any other assistance measures consistent with the goal of the loan subsidy fund and approved by the United States.

35.    OceanFirst may offer more than one or all of the forms of assistance listed in Paragraph 34, but OceanFirst will offer qualified applicants the choice of at least two such forms of assistance from which they may select. The combined form of subsidies will not exceed $20,000 per loan origination for a qualified applicant or co-applicants. A qualified applicant may not obtain loan subsidy funds, on their own or through a co-applicant, for more than one loan origination.

36.    OceanFirst will annually evaluate the effectiveness of its loan subsidy fund program and its progress in deploying funds to qualified applicants to identify any needed changes to the program to better reach residents of majority-Black, Hispanic, and Asian census tracts. OceanFirst will present a summary of its evaluation and any proposed changes to the program to the United States as part of its annual reporting requirement under Subsection V.B. Any proposed changes will be subject to non-objection by the United States.

37.    The annual reports described in Subsection V.B. will also include an accounting of all subsidies in accordance with the data specifications of the United States.

38.    No provision of this Order, including any loan subsidy or equivalent program, requires OceanFirst to make any unsafe or unsound loan or to make a loan to a person who is not qualified for the loan based upon lawful, nondiscriminatory terms; however, OceanFirst may choose to apply more flexible underwriting

standards in connection with its programs under this Order. OceanFirst's underwriting standards applied to residents of, and individuals seeking to purchase residential properties in, majority-Black, Hispanic, and Asian census tracts must be no less favorable than the standards applied in majority-white census tracts.

## H.    Community Development Partnership Program

39.    OceanFirst will partner with one or more community-based or governmental organizations that provide the residents of majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area with services related to credit, financial education, homeownership, and/or foreclosure prevention. OceanFirst will develop these partnerships in a manner consistent with achieving the goals of this Consent Order. Through these partnerships, OceanFirst will spend at least $400,000 over the term of this Order on professional services to residents of majority-Black, Hispanic, and Asian census tracts that increase access to residential mortgage credit and serve the credit needs of those communities.

40.    As part of the Remedial Plan under Subsection IV.B. of this Order, OceanFirst will submit a proposal to the United States describing how it will implement the requirements of Paragraph 39. The proposal will include an explanation of its proposed partner(s) and, to the extent available, OceanFirst's plans to implement the partnership(s) and a description of how the partnership(s) will be used to meet the credit needs identified in the Community Credit Needs Assessment. The proposal will be subject to non-objection by the United States.

41.    OceanFirst will evaluate the partnership(s) outlined in Paragraph 39 annually, including by considering the Community Credit Needs Assessment, to

identify any needed changes to the program or better assist residents of majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area in obtaining credit. OceanFirst will present a summary of its evaluation and any proposed changes to the United States as part of its annual reporting requirement under Subsection V.B. Any proposed changes will be subject to non-objection by the United States.

### I. Advertising, Community Outreach, Consumer Financial Education, and Credit Counseling Initiatives

42.     OceanFirst will spend at least $140,000 each year of the Consent Order on advertising, outreach, consumer financial education, and credit counseling in the New Brunswick Lending Area, as described in this Subsection.

43.     As part of the Remedial Plan required by Subsection IV.B., OceanFirst will submit a plan to the United States detailing how OceanFirst will spend these funds to increase access to credit extended in majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area for the period remaining in the term of the Consent Order ("Outreach Plan"). The Outreach Plan will include an explanation of why OceanFirst selected certain approaches and community partnerships and how OceanFirst's advertising, community outreach, education, and credit counseling initiatives will meet the credit needs identified in the Community Credit Needs Assessment.

44.     The Outreach Plan will be subject to non-objection by the United States. If the United States objects to any portion of the Outreach Plan, OceanFirst will make revisions and resubmit its proposal within thirty days of receiving the United States'

objection. OceanFirst will begin implementation of its Outreach Plan within thirty days of receiving non-objection from the United States.

45.    OceanFirst will evaluate the strategies outlined in its Outreach Plan annually, including by considering the Community Credit Needs Assessment, to identify any changes necessary to better assist residents of majority-Black, Hispanic, and Asian census tracts in its New Brunswick Lending Area in obtaining credit. OceanFirst will present a summary of its evaluation and any proposed changes to the United States as part of its annual reporting requirement under Subsection V.B. Any proposed changes will be subject to non-objection by the United States. In the annual report required by Subsection V.B., OceanFirst will also include all advertising, outreach, promotional, and educational materials distributed each year pursuant to this Subsection.

### i.    *Advertising*

46.    OceanFirst will advertise its residential loan products, including products for which the loan subsidy fund outlined in Subsection IV.G., will be applied, to majority-Black, Hispanic, and Asian census tracts in its New Brunswick Lending Area and will target advertising to generate mortgage loan applications from qualified applicants in these census tracts. OceanFirst's advertising may include print media, radio, digital advertising, television, direct mail, social media, and any other appropriate medium non-objected to by the United States in writing. These advertisements must include similar information to other advertisements by OceanFirst. OceanFirst must advertise its mortgage lending services and products to majority-Black, Hispanic, and Asian census tracts in its New Brunswick Lending

Area at least to the same extent that it advertises its mortgage lending services and products to majority-white census tracts in its New Brunswick Lending Area.

47. OceanFirst will create point-of-distribution materials, such as posters and brochures, targeted toward increasing access to credit extended in majority-Black, Hispanic, and Asian census tracts. OceanFirst will place or display these promotional materials in its physical locations, including the New Brunswick Branch and new LPO described in Subsection IV.F.

48. All of OceanFirst's print advertising and promotional materials referencing residential mortgage loans will contain an equal housing opportunity logo, slogan, or statement. All radio or television advertisements will include an audible statement that OceanFirst is an "Equal Opportunity Lender" or "Equal Housing Lender."

### ii. Outreach

49. OceanFirst will provide a minimum of four outreach programs per year for real estate brokers and agents, developers, and public or private entities engaged in residential real estate-related business in majority-Black, Hispanic, and Asian census tracts to inform them of OceanFirst's products and services and to develop business relationships. As part of its annual reporting requirement under Subsection V.B., OceanFirst will provide a list of the outreach programs conducted in the past year, including the date, location, and a description of the content of each program.

### iii. Consumer Financial Education and Credit Counseling

50. OceanFirst will develop a consumer education program designed to provide information, training, and counseling services about consumer finance, credit

counseling, and credit improvement to individuals in majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area.

51.    Throughout the term of this Order, OceanFirst will provide a minimum of six consumer education seminars per year targeted and marketed toward residents in majority-Black, Hispanic, and Asian census tracts in the New Brunswick Lending Area and held in locations intended to be convenient to those residents. These seminars will cover credit counseling, financial literacy, or other related consumer financial education, to help identify and develop qualified loan applicants from those areas. OceanFirst may develop and provide the seminars in conjunction with the community-based or governmental organizations described in Subsection IV.H.

52.    Within sixty days of the Effective Date, OceanFirst will submit to the United States for non-objection a list of its planned consumer education events for the first twelve months of this Order, specifying the program, date, location, any associated community partners, and identifying whether the events will be in-person or virtual. Beginning twelve months after the Effective Date, OceanFirst will submit to the United States a list of its planned consumer education seminars, specifying whether those events will be in-person or virtual, as part of its annual reporting requirement under Subsection V.B. These programs and seminars will be subject to non-objection by the United States. OceanFirst will notify the United States of any proposed changes to the planned consumer education events as soon as practicable if the program date or location are modified or if the event will be adjusted to virtual from in-person. Each year, at least four such events must be held in person.

### J.      Assessment Area

53.     The Bank will include Middlesex, Monmouth, and Ocean counties in its CRA assessment area throughout the term of this Order.

## V.     EVALUATING AND MONITORING COMPLIANCE

### A.      Record Retention

54.     OceanFirst will retain all records related to its obligations under this Order and its actions taken to comply with this Order.  The United States has the right to review and copy these records upon request.

55.     Upon request by the United States, OceanFirst will provide to the United States the data that OceanFirst has submitted to the Federal Financial Institutions Examination Council in accordance with the Home Mortgage Disclosure Act of 1975, 12 U.S.C. §§ 2801–2811, during the term of this Order.  OceanFirst will provide this data in a format requested by the United States and will complete any such request within thirty days.

### B.      Annual Reports

56.     Beginning twelve months after the Effective Date, OceanFirst will submit annual reports to the United States on its progress in complying with the terms of this Order and associated plans and programs.  The final report will be delivered to the United States at least sixty days prior to the expiration of this Order.

57.     The annual reports will provide a complete account of OceanFirst's actions to comply with this Order and OceanFirst's assessment of the extent to which each obligation was met and plans were implemented.  If OceanFirst is unable to satisfy any obligations under this Order, OceanFirst will provide an explanation of

why it fell short for any particular component and will make recommendations to achieve the goals set forth in this Order.

### C. Submissions

58.    All material required by this Order will be sent to the United States by email to the Department of Justice attorneys assigned to this matter, Trial Attorney Marta Campos (marta.campos@usdoj.gov), Trial Attorney Nathan Shulock (nathan.shulock@usdoj.gov), and Assistant U.S. Attorney Susan Millenky (susan.millenky@usdoj.gov), or by other means agreed upon by the Parties.

59.    The United States will submit all non-objections to the Bank via email to the following recipients:  Mitchell Sandler PLLC Managing Partner Andrea Mitchell (amitchell@mitchellsandler.com) and Partner Christopher Napier (cnapier@mitchellsandler.com).  OceanFirst will notify the United States in writing if the recipient list changes.

## VI.    ADMINISTRATION

60.    The requirements of this Order will remain in effect for five years, except as provided in Paragraphs 61 and 62.

61.    If, within five years of the Effective Date, OceanFirst has not invested all money in the loan subsidy fund described in Subsection IV.G., this Order will remain in full effect until three months after OceanFirst has invested all the money in the loan subsidy fund and has submitted a final report to the United States that demonstrates the fulfillment of this obligation.

62.    Any time limits for performance may be extended by mutual written agreement of the Parties.  Other modifications may be made only upon approval of

the Court, by motion of any Party.  If there are changes in material factual circumstances, the Parties will work cooperatively to discuss and attempt to agree to proposed modifications to this Order.

63.    If disputes arise about the interpretation of, or compliance with, this Order, the Parties will endeavor in good faith to resolve any dispute before bringing it to the Court for resolution.  If OceanFirst is in material non-compliance with any provision of this Order or has a material failure to perform an act required by this Order, the United States may move the Court to impose any remedy authorized by law or equity, including attorneys' fees and costs.

64.    If the United States objects to any submission, the Parties will have thirty days to confer and resolve their differences.  The Parties may mutually agree to additional time to confer, if necessary.  If the Parties are unable to resolve their differences, either party may bring the dispute to the Court for resolution.

65.    Nothing in this Order excuses OceanFirst's compliance with any current, or subsequently effective, provision of law or order of a regulator.

66.    OceanFirst will notify the United States of any development that may materially affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company to OceanFirst; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against OceanFirst; or a change in OceanFirst's name or main office address.  OceanFirst will provide this

notice as soon as practicable, but in any case, at least fourteen days before the occurrence of such event or, if applicable, the full execution of a definitive written agreement with respect to such event.

67.    Within ten days of the Effective Date, OceanFirst will:

    a. Identify all businesses for which OceanFirst is the majority owner, or that OceanFirst directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; and

    b. Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales.

68.    OceanFirst will report any change in the information required to be submitted under Paragraph 67 as soon as practicable, but in any case, at least fourteen days before the change.

69.    This Order is binding on OceanFirst, including all of its officers, agents, servants, and employees, and all other persons in active concern or participation with them who have actual notice of this Order, assignees, and successors in interest.  If OceanFirst seeks to transfer or assign all or part of its operations to a successor or assign that intends to carry on the same or similar business, OceanFirst will obtain the written agreement of the successor or assign to obligations under this Order as a condition of sale, merger, or other transfer.

70.    The Parties agree that litigation is not reasonably foreseeable.  If any party implemented a litigation hold to preserve information, the party is no longer required to maintain it.  Nothing in this Paragraph relieves either party of any other obligations imposed by this Order.

71.    Except as provided in Paragraph 63, the Parties will bear their own costs and attorneys' fees.

72.    The Court will retain jurisdiction over this civil action to enforce the terms of this Order.


SO ORDERED, this 1st day of October, 2024.


_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

The undersigned hereby apply for and consent to the entry of this Order:

Respectfully submitted this 18th day of September, 2024.

**For the United States of America:**

PHILIP R. SELLINGER
United States Attorney

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

*s/ Susan Millenky*
MICHAEL E. CAMPION
Chief
SUSAN MILLENKY
Assistant U.S. Attorney
Civil Rights Division
U.S. Attorney's Office
970 Broad Street
Newark, NJ 07102
Phone: (973) 645-2700
Fax: (973) 297-2010
Email:
susan.millenky@usdoj.gov

*s/ Nathan Shulock*
CARRIE PAGNUCCO
Chief
JENNIFER A. SLAGLE PECK
Deputy Chief
MARTA CAMPOS
NATHAN SHULOCK
Trial Attorneys
Housing and Civil Enforcement Section
950 Pennsylvania Ave. NW – 4CON
Washington, DC 20530
Phone: (202) 514-4713
Fax: (202) 514-1116
E-mails:
marta.campos@usdoj.gov
nathan.shulock@usdoj.gov

**For OceanFirst Bank, National Association:**

*Andrea Mitchell*
ANDREA K. MITCHELL
Managing Partner
CHRISTOPHER T. NAPIER
Partner
Mitchell Sandler PLLC
1120 20th St., NW
Suite 725
Washington, DC 20036
Phone: (202) 886-5260
Emails:
amitchell@mitchellsandler.com
cnapier@mitchellsandler.com